IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BURKEY | ) | |
| | ) | |
| Petitioner, | ) | C.A. No. 06-122 Erie |
| | ) | |
| v. | ) | |
| | ) | **District Judge McLaughlin** |
| HARRY G. LAPPIN, | ) | **Magistrate Judge Baxter** |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner, John Burkey, be granted.

**II.    REPORT**

Petitioner has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' (the "BOP's") determination that he is not eligible for a reduction in his sentence under 18 U.S.C. § 3621(e)(2)(B)'s early release provision. [Document # 3]. He claims that the BOP improperly excluded him from early release eligibility based upon the fact that he had previously received that statute's early release benefit during a prior federal incarceration. He contends, *inter alia*, that the rule applied to him to automatically deny him early release – Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 – was promulgated in violation of the Administrative Procedures Act, 5 U.S.C. § 553 (the "APA") and is, therefore, invalid.

**A.**

On September 13, 1994, Congress enacted the "Violent Crime Control and Law Enforcement Act" ("VCCLEA") (Pub.L. 103-322), which included a new provision at 18 U.S.C.

1

§ 3621 that provides an incentive for inmates to participate in substance abuse treatment programs. This incentive allows an inmate to receive a reduction in his or her sentence of up to one year for completing a BOP treatment program. The statute provides:

> **Period of Custody** . . . The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B).

Congress did not define the eligibility criteria for early release consideration upon completing a substance abuse treatment program. On May 25, 1995, the BOP published an interim rule, effective June 26, 1995, which was designed to implement the sentence reduction provisions of the VCCLEA. 60 Fed.Reg. 27692; 28 C.F.R. § 550.58 (1995); Lopez v. Davis, 531 U.S. 230, 233-36 (2001). In response to both public comment and a division among the courts of appeals over the BOP's interpretation of Section § 3621(e)(2)(B)'s term "nonviolent offense," the BOP issued a revised interim rule on May 17, 1996 (61 Fed.Reg. 25121) and, again, on October 15, 1997 (62 Fed.Reg. 53690). See Lopez, 531 U.S. at 233-36.

On December 22, 2000, after notice and comment, the 1997 version of the interim rule was made final, see 65 Fed.Reg. 80749, and that rule is set forth at 28 C.F.R. § 550.58, Consideration for early release. In relevant part, the regulation provides: "[a]n inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a non-violent offense, and who is determined to have a substance abuse problem, and who successfully completes a residential drug abuse treatment program during his or her current commitment" may be eligible for early release by a period not to exceed 12 months. 28 C.F.R. § 550.58. The regulation also provides that: "An inmate who has successfully completed a Bureau of Prisons residential drug abuse treatment program on or after October 1, 1989 is otherwise eligible if: (i) the inmate completes all applicable transitional services programs in a community-based program (i.e., in a Community Corrections Center or on home confinement); and (ii) since completion of the program, the inmate has not been found to have committed a 100 level prohibited act and has not been found to have committed a prohibited act involving alcohol or

drugs." Id. § 550.58(a)(3)(i) & (ii).

28 C.F.R. § 550.58 also categorically denies Section 3621(e)(2)(B)'s early release to the following groups of inmates, even if an inmate otherwise meets eligibility criteria: (i) INS detainees; (ii) pretrial inmates; (iii) contractual boarders (for example, D.C., State, or military inmates); (iv) inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses; (v) inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion; and (vi) inmates whose current offense is a certain type of felony. Id. § 550.58(a)(1)(i)-(vi)(A-D)).

No portion of 28 C.F.R. § 550.58 addresses a situation like Petitioner's where, as set forth *infra*: an inmate received a sentence reduction through Section 3621(e)(2)(B)'s early release provision and satisfied his sentence; was released; was arrested and convicted a second time; entered the BOP's drug treatment program; and, then sought to receive another sentence reduction. The BOP explains that, at the time the interim rules for 28 C.F.R. § 550.58 were issued and published (May 1995 through October 1997), no inmate convicted of additional crimes after receiving a Section 3621(e)(2)(B) sentence reduction had sought a subsequent sentence reduction, nor had the BOP provided inmates convicted of additional crimes after receiving a Section 3621(e)(2)(B) sentence reduction with the option of receiving a subsequent sentence reduction. (Document # 12, Exhibit 3 at ¶ 4).

After issuance of the interim rules, the BOP explains, the issue regarding the possibility of repeating Section 3621(e)(2)(B) early releases came to the attention of its Director. On December 17, 1998, Operations Memorandum 089-98, *Central Office Review of 3621(e) Release Cases, Interim Procedures*, was released to address this and other issues relating to Section 3621(e)(2)(B) early release. (Id. ¶ 5). The Operations Memorandum provided, in part:

> Previous 3621(e) Release - Some inmates have been released under 3621(e), and have been returned to prison on supervised release violations. These inmates may not be eligible for early release even though they are participating in the residential drug program during this separate commitment.

(Document # 12, Exhibit 3a).

3

The BOP states that the Operations Memorandum was issued because of the Director's concern that if inmates were allowed to receive multiple Section 3621(e)(2)(B) sentence reductions, its Residential Drug Abuse Treatment Program ("RDAP") could be used as a "revolving door" for career criminals to gain quicker access to their victims in the community, and because inmates who engage in further criminal activity involving drugs display a readiness to endanger themselves and others, they should not be released months in advance of completing their sentences. (Document # 12, Exhibit 3 at ¶ 9). The Director determined that, if inmates were permitted a second early release, not only would Congressional intent be undermined, but the limited space in the RDAP could be filled with inmates seeking second, third, or even fourth sentence reductions. (Id.)

On December 31, 2000, Operations Memorandum 089-98 lapsed. Almost three years later, on September 29, 2003, the BOP issued **Program Statement 5331.01**, *Early Release Procedures Under 18 U.S.C. § 3621(e)* – the program statement at the center of this proceeding.[1] The purpose of the program statement "is to establish criteria and procedures when considering an inmate for early release." P.S. 5331.01, Page 1. At Paragraph 5(c) of the program statement, the BOP sets forth the categories of inmates that are not eligible for early release. Id., Page 2. It repeats the categories of inmates that are denied Section 3621(e)(2)(B)'s early release as set forth in 28 C.F.R. § 550.58(a)(1)(i)-(vi)(A-D).[2] It also denies early release to one additional group of inmates:

> **Prior Early Release Granted**. Inmates may earn an early release for successful RDAP completion only once. *Inmates returning on supervised release violations and/or inmates who are sentenced for new offenses are not eligible for early release if they received it previously.*

Id., Page 3 (emphasis added).

---

[1] A complete copy of Program Statement 5331.01 is located at Document # 12, Exhibit 1f.

[2] The program statement expressly states that parole eligible inmates may not receive early release. 28 C.F.R. § 550.58 provides that such inmates are not eligible for early release by limiting early release to inmates sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D. See 97 Fed.Reg. 25121-22 ("Inmates sentenced under 'old law' provisions are not eligible, regardless of their eligibility for parole.")

4

**B.**

In 1996, Petitioner was incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean") in Bradford, Pennsylvania, where he was serving an aggregate sentence (to be followed by a term of supervised release) that he had received for federal drug convictions. The BOP determined that he was eligible for early release pursuant to Section 3621(e)(2)(B). He was transferred to the Federal Medical Center at Lexington, Kentucky, to participate in its RDAP. He completed the program, and on June 19, 1998, he received an early release pursuant to Section 3621(e)(2)(B) and satisfied his term of imprisonment.

During his release, Petitioner committed federal drug crimes and, on July 17, 2003, he was sentenced in The United States District Court for the Northern District of Ohio to a 57-month term of imprisonment with a 3-year term of supervised release to follow for "Conspiracy to Possess with Intent to Distribute 100 Kilograms or More of Marijuana," in violation of 21 U.S.C. § 846. The court recommended that the BOP place him in a substance abuse program. Additionally, on around August 4, 2003, the court imposed a three-month supervised release violator term, to be served concurrent to the 57-month term of imprisonment that he was already serving.

On December 7, 2004, the BOP informed him that he was provisionally determined to be eligible for early release pursuant to Section 3621(e)(2)(B) and he was placed on the RDAP waiting list. (Document # 12, Exhibit 1e). That determination was made in error because Paragraph 5(c), <u>Prior Early Release Granted</u>, of Program Statement 5331.01 (which had been in effect for over a year by that point) expressly prohibits inmates from receiving the early release benefit more than once. On October 13, 2005, the BOP realized its error and notified Petitioner that, although he was qualified to participate in the RDAP, he was *ineligible* for early release under Section 3621(e)(2)(B) because he had previously received an early release under that statute. (Document # 12, Exhibits 2e & 2f). No other reason was provided for the denial of early release.

Petitioner filed a Request for Administrative Remedy with the Warden in which he argued that the application to him of Paragraph 5(c), <u>Prior Early Release Granted</u>, of Program Statement 5331.01 violated the *Ex Post Facto* Clause. (Document # 12, Exhibit 1b). The Warden denied relief, and Petitioner filed a Regional Administrative Remedy Appeal in which he argued an *ex*

*post facto* violation and that it was an abuse of discretion to deny him early release.  (Document # 12, Exhibit 1c).  Upon denial of that appeal, he filed a Central Office Administrative Remedy Appeal.  (Document # 12, Exhibit 1d).  There, he argued for the first time that Paragraph 5(c), <u>Prior Early Release Granted</u>, of Program Statement 5331.01 was issued in violation of the APA.  (<u>Id.</u>)

On March 28, 2006, Petitioner's Central Office Administrative Remedy Appeal was denied.  Harrell Watts, Administrator, National Inmate Appeals, advised him that his *ex post facto* claim had no merit.  (<u>Id.</u> at 4).  The APA claim was not addressed, perhaps because under the applicable regulations an inmate may not raise on appeal issues not raised in the lower level filings.  28 C.F.R. § 542.15.

Upon completion of his administrative remedies, Petitioner commenced the instant action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Thomas W. Patton, Esquire, Assistant Federal Public Defender, was appointed to represent him.

Because it appeared that Petitioner may not have properly exhausted the APA claim since he did not raise it during his lower level administrative remedy filings, <u>Harden v. Sherman</u>, Civil Action No. 05-356 Erie, slip op., 2006 WL 3814767 (W.D. Pa. Dec. 27, 2006), oral argument was scheduled on exhaustion and procedural default.  (Document # 14).  However, the BOP submitted a motion for clarification and expressly conceded that Petitioner had exhausted his administrative remedies on all issues raised in the petition.  (Document # 15).  In light of the BOP's concession, oral argument was conducted on July 26, 2007, and was limited to the merits of the APA claim.  The transcript of that argument is at Document # 17.

### C.

Although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241.  <u>Bennett v. Soto</u>, 850 F.2d 161 (3d Cir. 1988); <u>Gomori v. Arnold</u>, 533 F.2d 871 (3d Cir. 1976).  Because Petitioner is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

**D.**

Petitioner contends that the BOP violated the APA when it issued Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 without complying with the APA's notice-and-comment requirements. The APA provides that an agency may not adopt a "rule" (commonly referred to as a "legislative rule" or "substantive rule") without providing prior notice and comment through publication in the Federal Register. 5 U.S.C. § 553(b), (c). It defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" Id. § 551(4). Rules that are issued in violation of the APA are invalid.

The BOP counters that Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is not a "rule" as defined by the APA. Instead, it argues that provision of the program statement is an "interpretative rule" and, as such, is exempt from the APA's notice-and-comment requirements. Id. § 553(b)(3)(A). If it is not an interpretative rule, the BOP contends, then it is a "general statement of policy," which also is exempt. Id.

**(i)**

The APA does not define "interpretative rule." In Dia Navigation Company v. Pomeroy, 34 F.3d 1255 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit acknowledged that "[t]he distinction between 'substantive' or 'legislative' rules and 'interpretive' or 'interpretative' rules has proven to be one incapable of being drawn with much analytical precision. Indeed, courts customarily begin recitations of the law on the subject with remarks such as 'the distinction is fuzzy'; 'enshrouded in considerable smog'; or 'far from crystal clear.'" Id. at 1264 (internal citations omitted). Nonetheless, the Court of Appeals found that basic principles have emerged to guide a court in distinguishing between the two types of rules. Id.

"Interpretative rules" are statements of policy issued by an agency setting forth how it interprets or construes a statute or regulation. Id. (citing FLRA v. Dep't of the Navy, 966 F.2d 747 (3d Cir. 1992) (en banc); Bailey v. Sullivan, 885 F.2d 52, 62 (3d Cir. 1989); United States v.

Walter Dunlap & Sons, Inc., 800 F.2d 1232, 1238 (3d Cir. 1986)).  In contrast, "legislative rules" "create rights, assigns duties, or impose obligations that are not already outlined in the statute itself[.]"  Id. (citing La Casa Del Convaleciente v. Sullivan, 965 F.2d 1175, 1178 (1st Cir. 1992)). "Put yet another way," the Court of Appeals stated:

> what distinguishes interpretative from legislative rules is the legal base upon which the rule rests.  If the rule is based on specific statutory provisions, and its validity stands or falls on the correctness of the agency's interpretation of those provisions, it is an interpretative rule.  *If, however, the rule is based on an agency's power to exercise its judgment as to how best to implement a general statutory mandate, the rule is likely a legislative one.*

Id. (emphasis added) (quoting United Technologies Corp. v. EPA, 821 F.2d 714, 719-20 (D.C. Cir. 1987)).

Although application of the above-cited principles can in some cases result in a "somewhat Delphic" exercise, id., in the instant action the task before this Court is not so complicated. Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is not interpreting any statute or regulation.  It is – similar to the other rules set out in 28 C.F.R. § 550.58 that were properly presented for notice and comment – an exercise of the discretion afforded to the BOP to exclude a specific category of inmates from receipt of the Section 3621(e)(2)(B) early release benefit.  It is a rule "based on [the BOP's] power to exercise its judgment as to how best to implement [Section 3621(e)(2)(B)]" and is therefore "a legislative one." Id. at 264 (quoting United Technologies Corp., 821 F.2d at 719-20).

The determination that the rule at issue here is not an "interpretative rule" is so unavoidable that the BOP has been unable to offer this Court an argument that would persuade it to hold otherwise.  In its initial brief to the Court, it contended that Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is an interpretative rule because it "clarified the regulation set forth at 28 C.F.R. § 550.58(a)(3)(ii)." (Document # 12 at p. 9).   The BOP's argument was patently wrong and unsupportable,[3] and its counsel withdrew it at oral argument.  (7/26/2007 Tr. at

---

[3]  28 C.F.R. § 550.58(a)(3)(ii) limits early release to inmates who have successfully completed the RDAP on or after October 1, 1989, and who have not been found to have committed "a prohibited act of 'greatest severity' or an act

(continued...)

8

23).

Left without its sole argument to support its contention that Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is an interpretative rule, the BOP now contends that that program statement is actually interpreting Section 3621(e)(2)(B) itself. This argument is unconvincing. The only limitations Section 3621(e)(2)(B) places on early release is conviction of a nonviolent offense and completion of a substance abuse treatment program. Lopez, 531 U.S. at 241. When the BOP exercises its discretion and places further restrictions on early release, it is implementing Section 3621(e)(2)(B), not interpreting it. And, although the Supreme Court in Lopez expressly held that the BOP was free to exercise its discretion to place further restrictions on early release than that set forth in the statute, id., the BOP, of course, must comply with the APA notice-and-comment procedures when it does so, as it did when it promulgated the rules set forth in the final version of 28 C.F.R. § 550.58.

### (ii)

Because Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is not an interpretative rule, this Court must next consider whether it qualifies as a "general statement of policy," which would also be exempt from the APA notice-and-comment requirements. 5 U.S.C. § 553(b)(3)(A).

The APA does not define "general statement of policy." However, case law from the United States Court of Appeals for the District of Columbia illustrates the difference between

---

[3](...continued)
involving alcohol or drugs." The BOP provided the Court with no explanation as to how Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 clarified or interpreted 28 C.F.R. § 550.58(a)(3)(ii). In a footnote, it simply stated: "Clearly a new federal conviction, and specifically a federal conviction for drug use, possession and/or trafficking, amounts to at least a prohibited act of the greatest severity level, and/or a prohibited act which involves alcohol or drugs." (Document # 12 at p. 9 n.5). The regulation, however, denies Section 3621(e)(2)(B) early release to those inmates who, although they completed a drug treatment program, committed certain prohibited acts *as inmates*. See also 28 C.F.R. § 541.13 Prohibited acts and disciplinary severity scale (defining "prohibited acts"). The legislative history confirms that it was promulgated to apply to inmates that "maintain[ed] a discipline record" as specified therein. 60 Fed.Reg. 27693. It does not govern individuals such as Petitioner, who committed a criminal act while they were released. Petitioner's federal drug conviction is not, as the BOP initially argued before this Court, either a prohibited act of the greatest severity level or a prohibited act which involves alcohol or drugs.

9

"rules" subject to the APA and "general statements of policy."  The key factor is the binding nature of the rule.[4]  "If a document expresses a change in substantive law or policy (that is not an interpretation) which the agency intends to make binding, or administers with binding effect, the agency may not rely upon the statutory exemption for policy statements, but must observe the APA's legislative rulemaking procedures."  General Electric Co. v. EPA, 290 F.3d 377, 382-83 (D.C. Cir. 2002) (quoting Robert A. Anthony, *Interpretive Rules, Policy Statements, Guidances, Manuals, and the Like-Should Federal Agencies Use Them to Bind the Public?* 41 DUKE L.J. 1311, 1355 (1992)).

Therefore, if a policy statement uses "mandatory, definitive language," it does not qualify as a "general statement of policy."  United States Telephone Ass'n v. FCC, 28 F.3d 1232, 1234 (D.C. Cir. 1994) (noting that it has "said repeatedly" that the line between an invalid legislative rule and a valid policy statement "turns on an agency's intention to bind itself to a particular legal position"); Pub. Citizen, Inc. v. United States Nuclear Regulatory Comm'n, 940 F.2d 679, 681-82 (D.C. Cir. 1991) ("In determining whether an agency statement is a substantive rule, which requires notice and comment, or a policy statement, which does not, the ultimate issue is 'the agency's intent to be bound.'"); Alaska v. United States Dep't of Transp., 868 F.2d 441, 445-46 (D.C. Cir. 1994) (a "general statement of policy" must "genuinely leave[ ] the agency … free to exercise discretion.") (quoting Cmty. Nutrition Inst. v. Young, 818 F.2d 943, 945-46 (D.C. Cir. 1987) (ellipsis in original)); McLouth Steel Products Corp. v. Thomas, 838 F.2d 1317, 1320 (D.C. Cir. 1988) (if a statement denies the decisionmaker discretion in the area of its coverage, so that he, she or they will automatically decline to entertain challenges to the statement's position the statement is binding and must be treated as a legislative rule).  See also 1 C. KOCH, JR., ADMINISTRATIVE LAW AND PRACTICE § 4.11 (2d ed. and Supp. 2006) (general statements of policy "should not purport to establish a 'binding norm'"; "For many courts, … the critical factor for determining whether the new policy constitutes an excepted statement is whether it left the agency officials free

---

[4]  In contrast, interpretative rules may have "binding" or "nondiscretionary" effect on the agency.  See Dismas Charities, Inc. v. United States Department of Justice, 401 F.3d 666, 681 (6th Cir. 2005); John F. Manning, *Nonlegislative Rules*, 72 GEO. WASH. L. REV. 893 (2004).

to exercise discretion in an individual case.") (citing Pacific Gas and Electric Co. v. FPC, 506 F.2d 33, 38-39 (D.C. Cir. 1974) (emphasis added)).  As Professor John F. Manning has explained:

> Although rarely discussed in explicit terms, the apparent rationale is straightforward: If an agency is announcing its future intentions in tentative terms, how can anyone object to its doing so without the formalities of notice-and-comment rulemaking?  Conversely, if an agency rule could make legally binding policy without going through those formalities, what incentive would it have to invoke the more cumbersome procedures? Accordingly, a policy statement's validity hinges quite directly on the agency's intention – or, more accurately, its lack of intention – to bind either itself or the public.

John F. Manning, *Nonlegislative Rules*, 72 GEO. WASH. L. REV. 893, 918 (2004).

At oral argument, the BOP's counsel admitted the obvious:  Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is binding.  (7/26/2007 Tr. at 27, 39).  A BOP employee has no discretion to ignore the program statement and exercise his or her own discretion as to whether a second or subsequent Section 3621(e)(2)(B) early release should be granted to an individual based upon the individual history of the inmate under consideration for early release. Once a BOP employee determines that an inmate has had a prior Section 3621(e)(2)(B) early release, the employee must find the inmate ineligible for another early release under that statute.

In an effort to avoid a determination that Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is binding, the BOP has – for the second time in this proceeding – retracted a position that it previously unequivocally presented to this Court.  In its post-hearing brief, the BOP now contends that it "stands corrected" and that Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is not binding.  (Document # 18 at pp. 4-7).  It is not binding, according to the BOP, because a Warden may seek a waiver from any of the non-regulatory provisions contained in any of the BOP program statements when his or her institution "is unable to comply with the provision of a policy due to some unique condition."  (Document # 18 at p. 5 (quoting P.S. 1221.66, Chapt. 13, Page 1 (attached to Document # 18 at Exhibit 1b)) .

As Petitioner convincingly demonstrates in his post-hearing brief (Document # 19), the BOP's most recent about-face is wholly unconvincing.  The fact that a Warden must seek a waiver from any otherwise mandatory directive contained in a program statement if he or she cannot comply with that provision establishes that those mandatory directives are binding.  If not, then a

Warden would have no need to get a waiver. The Court of Appeals for the District of Columbia Circuit explained as much in Community Nutrition Institute v. Young, 818 F.2d 943 (D.C. Cir. 1987). At issue in that case were "action levels" issued by the Food and Drug Administration. Young, 818 F.2d at 945. The action levels informed food producers of the allowable levels of unavoidable contaminants in food, particularly, aflatoxins in corn. Id. A consortium of organizations and private citizens challenged the FDA's promulgation of the action levels claiming that the FDA had not complied with the APA when enacting the action levels. The FDA claimed that the action levels were "nothing more than nonbinding statements of agency enforcement policy" and therefore exempt from the APA's notice-and-comment requirements. Id. at 945-96. The Court of Appeals for the District of Columbia rejected this argument, in part, because the FDA required food producers to obtain exceptions from the action levels if they wished to market any food that contained contaminant levels above those set in the action levels. It observed:

> A specific regulatory provision allows FDA to "exempt from regulatory action and permit the marketing of any food that is unlawfully contaminated with a poisonous or deleterious substance" if certain conditions exist. [21 C.F.R.] § 109.8(a). This language implies that in the absence of an exemption, food with aflatoxin contamination over the action level is "unlawful." This putatively unlawful status can derive only from the action level, which again, indicates that the action level is a presently binding norm. If, as the agency would have it, action levels did indeed "not bind courts, food producers or FDA," Supplemental Brief for Appellee at 7, it would scarcely be necessary to require that "exceptions" be obtained.

Id. at 947.

Thus, the fact that a Warden would need to receive a waiver if his or her institution sought not to comply with the mandate set forth in Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 demonstrates that the rule contained therein is the binding norm. The BOP's belated argument that the program statement is not binding is rejected.

#### (iii)

In conclusion, Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 is not an interpretative rule and it is not general statement of policy. It fits squarely within the APA's definition of a "rule" – it is "part of" the BOP's "statement of general or particular applicability and future effect designed to implement" Section 3621(e)(2)(B). 5 U.S.C. § 551(4).

As such, the BOP was required to provide prior notice and an opportunity to comment on it through publication in the Federal Register.  5 U.S.C. § 553(b), (c).  In his post-hearing brief, Petitioner appropriately addresses the importance of the APA's notice-and-comment requirement, observing that a significant portion of the liberty enjoyed by the citizens of this country is subject to the discretion of unelected officials employed in administrative agencies.  (Document # 19 at p. 5).

> In a sense, notice-and-comment procedures serve as a Congressionally mandated proxy for the procedures which Congress itself employs in fashioning its 'rules,' as it were, thereby insuring that agency 'rules' are also carefully crafted (with democratic values served by public participation) and developed only after assessment of relevant considerations.  It is thus, in theory, important for APA procedures to be followed before an agency pronouncement is deemed a binding legislative rule not merely because the APA says so, but because in saying so the APA is protecting a free people from the danger of coercive state power undergirding pronouncements that lack the essential attributes of deliberativeness present in statutes.

Cmty. Nutrition Inst., 818 F.2d at 951 (Starr, J., concurring in part and dissenting in part).

The question presented in this case is not whether the BOP may categorically deny Section § 3621(e)(2)(B) early releases to inmates who have previously received that benefit.  It does.  Lopez, 531 U.S. at 238-45.  Instead, the question for this Court is whether the BOP complied with the APA by allowing public participation through notice and comment so that Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 was developed only after assessment of relevant considerations.  It did not.  The BOP cannot avoid the requirements of the APA by placing its legislative rules in its program statements, instead of first publishing them in the Federal Register.

### E.

The BOP urges that, if this Court grants the writ, the proper relief is to remand the case to it for reconsideration of Petitioner's early release without regard to Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01.  Petitioner objects.  He argues that the BOP has established a categorical approach, as opposed to an individualized approach, to Section 3621(e)(2)(B) early releases.  Lopez, 531 U.S. at 243-44.  Program Statement 5331.01 and 28 C.F.R. § 550.58 show the categorical nature of the Section 3621(e)(2)(B) early release decision (as

do the documents the BOP submitted to this Court specific to Petitioner's evaluation).  If an inmate is "eligible" for an early release, then he or she receives an early release.  The BOP does not deny that it does not engage in any individual consideration beyond the eligibility requirements set forth in Program Statement 5331.01 and 28 C.F.R. § 550.58.  Accordingly, Petitioner contends, if he is "eligible," he gets an early release, and the only thing keeping him from being eligible for early release is the application of Paragraph 5(c), Prior Early Release Granted, of Program Statement 5331.01 to him.  Since that rule is invalid, Petitioner argues, he is eligible for, and must receive, an early release.

Petitioner's position is persuasive.  He has completed all the necessary programs to receive early release, and he, in fact, has less than one month remaining on his term of imprisonment.  There is nothing before this Court to indicate that, if only valid rules were applied to him, he would have received an early release of less than the short amount of time remaining on his term of imprisonment.  Therefore, in this case, the Court should direct the BOP to immediately release Petitioner.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be granted and that the BOP be directed to immediately release Petitioner.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                                                /s/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        Chief U.S. Magistrate Judge

Dated: August 31, 2007